Tilghman C. J.
This is an action of debt for the penalty of 50?. brought by the plaintiff against the defendant a justice of the peace, for marrying his daughter under the age of twenty-one years without his consent, coutrary to the act of 14th February 1729. The Court of Common Pleas ordered a non pros to be entered, because the plaintiff had not given notice to the defendant previous to the commencement of the action, agreeably to the act of 21st March 1772. Two questions arise. 1. Whether notice was necessary? 2. Whether the notice given by the plaintiff was sufficient?
1. The act directs that “ no writ shall be sued out against, nor any copy of any process served on, any justice of the peace, for anything by him done in the execution of his office, until notice in writing of such intended writ or process, shall have been delivered to him, or left at the usual place of his abode by the party, his attorney or agent, who intends to sue or cause the same to be sued out, or served, at least thirty days before the suing out or serving the same, in which notice shall be clearly and explicitly contained, the cause of action, which the said party hath, &c.” This act should be liberally construed for the protection of justices of the peace, who are not often lawyers, and are frequently called on to act in the discharge of their duty, without an opportunity of taking advice. It is but reasonable, that they should have time to reflect, and to make amends to the person injured, in case they should inadvertently do wrong. This is an encouragement to the magistrate, and no injury to the party complaining. The defendant is sued for marrying the plaintiff’s daughter. Was this an act in the execution of his office ? It certainly was, for justices are authorized to sign certificates of marriage by the act of 1700. Then why should not notice be necessary? Because, say the plaintiff’s counsel, the act of assembly directing notice to be given, authorizes the justice, at any time within thirty days after notice, to tender amends to the party complaining. They infer, that an action for a penalty is not within the act, because in such case there can be no amends, the plaintiff being entitled to *the whole penalty. Besides, they consider the justice in the light of an offender against a penal *23 statute, and therefore not within the protection of the law. Strictly speaking I do not know, that there can be any tender of amends. But at least, there may be a tender of the penalty, which would save the costs of suit, and that would be an advantage to the justice. Besides, his character and his feelings may be interested in preventing a suit. As to his being an offender, there is no weight in the remark; the law may be broken very innocently, by marrying a person under the age of twenty-one, supposed to be of full age. This is a fact in which the justice is very liable to mistake, for he must derive his knowledge from the report of others. The case therefore appears to me, to be within both the words and the spirit of the act.
2. As to the second point, it is necessary to consider the nature of the notice which was given. It contained a recital of the acts of assembly on which it was founded, and of the injury complained of, and concluded with saying, that “I, as attorney for the said William Mitchell, shall commence a suit against you for the sum of 50i., in the name, and for the use of the said William Mitchell, for that you contrary to the said act of assembly did marry his daughter under the age of twenty-one years, &c.” It is not denied that here was clear and explicit notice of the cause of action in express terms, and I think there was by direct implication notice of an intended writ, because we have no way of commencing a suit but by writ. The objection to the notice is, that it makes no mention of the kind of writ or the kind of action. The act of assembly does not require notice of the kind of action but of the cause of action; nor does it in express terms require notice of the kind of writ, but of such intended writ or process. We have but two kinds of writs, a capias and a summons. It could not be material to the defendant to know which of these was intended. But it was very material to be informed that a writ was to be issued against him, and of the cause for which it was to be issued. This was all that was necessary, to enable him to consider whether he had done wrong, and whether he had not better prevent the suit by offering satisfaction. It was the intention of the legislature to furnish the justice, with such substantial information as should enable him to his conduct *with prudence, and not to impose such difficulties on the party complaining as might defeat his action on nice and captious objections. This is the light in which the act of assembly strikes me, and if the subject was entirely new, I think it would not be doubted that the notice was sufficient. But it appears that our act is drawn in *24 the same words as -the English statute of 24 Geo. 2 ch. 44, the construction of which is supposed to have been fixed by the case of Strickland v. Ward, 7 Term Rep. 631, 633, in notis, determined by Justice Yeates at Nisi Prius in the year 1767. It was an action of trespass and false imprisonment against a justice, for committing the defendant for returning to the parish whence he bad been removed. The plaintiff had given a notice, in which was contained the cause of action, and it was added that an action on the case for imprisonment and assault would be brought, but the action brought, was trespass vi et armis and not case. The variance between the notice, and the action brought, might be a reason for the decision in that case; because the justice might have omitted to tender amends, perceiving by the notice, that the plaintiff could not support his action. There is that material difference between the case of Strickland v. Ward, and that which we are now to decide. It is sufficient therefore to say that the cases are different, and we find no other adjudged case on the subject prior to the revolution, and of course none that is an authority in this Court. What the English adjudications since have been, it is not material to inquire. I believe they have given their statute a very strict construction, much stricter than the circumstances of this country require. In England, where various kinds of writs aud process are in-use in the different courts, there may be some reason for particularizing the kind of writ intended to be sued out. But our writs are so few, and our process so simple, that the defendant can derive very little advantage from a precise mention of them. I am therefore of opinion that the notice in this case was sufficient.
Yeates J.
Two exceptions have been taken to the opinion of the Court of Common Pleas delivered on the trial.
The first is, that in a suit brought against a justice of the for taking him to join in marriage a minor under *the tuition or ^er parent, without the consent of such parent living within the state, and who can be consulted with, no written notice is necessary under the provisions of the first section of the act of 21st March 1772. 1 Eal. St. Laws, 604. The words are, “no writ shall be sued out against, nor any copy of any process at the suit of a subject shall be served on, any justice of the peace, for any thing by him done in the execution of his office, until notice in writing, of such intended writ or process shall have been delivered to him, or left at the usual place of his abode, by the party his attorney or agent, who intends to sue, or cause the same to *25 be sued or served, at least thirty days before the suing out or serving the same; in which notice shall be clearly and explicitly contained the cause of action, which the said party hath, or claimeth to have, against such justice of the peace, &c.” It has been urged that it appears in the preamble of the law, to have been the intention of the legislature to protect justices of the peace against small and involuntary errors in their proceedings; but that they never could have meant to give them aid in the case of a gross malfeasance, in violation of parental rights. But the expressions in the law are broad and comprehensive. No writ shall be sued out against any justice of the peace for any thing by him done in the execution of Ms office, until notice, &c. I cannot bring my mind to doubt for a single moment, that when the defendant undertook to perform the marriage ceremony, between the plaintiff’s daughter and Amos Williams, he did the act in the execution of his office, as a justice of the peace, and of course he became entitled to a written notice, before process was issued against him. Indeed the declaration charges the defendant with the penalty of 50Z. for that he, acting as a justice of the peace, did take upon him to join the parties in marriage. Upon this objection therefore I feel no difficulty whatever.
But it has been further contended, that the opinion of the court below was incorrect, when they decided that the notice given to the defendant was insufficient and defective.
The law professes the intention to render justices of the peace more safe in the execution of their offices, and directs that a written notice of the intended writ or process shall be delivered to the justice, clearly and explicitly containing the *cause of action, thirty days previous to the commencement of the suit. The notice here served on the defendant by the plaintiff’s attorney copies verbatim the whole of the first section and the greater part of the second section of the marriage act of 24th February 1729, including “the forfeiture of 50i. to be recovered in any court of record within this province, &c.” It then states minutely the act of joining Elizabeth Mitchell, the minor daughter of the plaintiff and under his tuition, in marriage with Amos Williams, without publication of banns, or a certificate of the consent of her father, who then lived in Mifflin county; and gives the defendant notice, that as attorney for the plaintiff, he would commence a suit against him for the sum of 50i. in the name of and for the use of the plaintiff, for his violation of the recited act, &c.
The cause of action could not be more clearly and ex *26 plicitly stated; and the only question is, whether the intended writ or process was sufficiently set out in the notice, within the true meaning of the law in question. The defendant’s counsel rely on the case of Strickland v. Ward determined by Mr. Justice Yeates, at Winchester summer assizes 1767, cited in the notes to 7 Term Reports, 631, 633. There an action of trespass and false imprisonment was brought against a justice of the peace, and the notice given to him under the statute of 24 Geo. 2, c. 44, was, that an action on the case for false imprisonment and assault, would be brought against him. The court gave a strict construction to the words of the statute in favor of the justice, and held the notice to be insufficient. The case is very shortly reported, and does not expressly state the reason of the judge’s opinion, but that he was decisively in favor of the objection. The objection made by the counsel was, that the notice given was of an action upon the case, and such an action would not lie in this case. The defendant might therefore rely on nonsuiting the plaintiff in such an action, and with that view make no tender of amends. The notice was misleading; and so far from apprising the defendant of the writ or process intended to be sued out, the process in such an action must necessarily be of a different nature from the present. The writ in the action was sued out without any previous notice of it. No notice was given of this writ; none that would agree with this writ. The words of the act of parliament are positive and *peremptory, that notice shall be given of the very writ or process intended to be sued out, &c.
For my own part I feel no repugnance in declaring that I find myself bound by decisions in the books antecedently to 4th July 1776, which are applicable to our local situation and system of jurisprudence, and which do not contravene my ideas of right and wrong. But I think the present case fairly distinguishable from that relied on. The first section of our act of 21st March 1772, is evidently copied from the British statute of 24 Geo. 2, c. 44, merely substituting thirty days for one calendar month. In England, suits commence in the courts of King’s Bench, Common Pleas and Exchequer, by different species of process, and it is well known, that there are some writs that the party may, and some that he may not sue out in such a case. It is truly said that if a plaintiff were to give notice, that he intended to sue out a quo minus iti the court of King’s Bench, the justice knowing that to be a decisive objection, need not tender amends, but may take advantage of the objection at the trial. In this state, all demands of a personal nature are sued for by writ. *27 Whether an action originates by summons or capias, it is equally by writ. If in this instance, the notice was that the plaintiff would sue by a writ in debt for 501. for the penalty of the law, stating the illegal act, it would be amply sufficient. What real difference then is there between that and the present notice served on the defendant? Can any distinction be pointed out, except that the latter is less formal in a mere technical view ? But it certainly would convfey true information of the nature of the cause of action, which the plaintiff meant to complain of; it could not possibly mislead the justice. The declaration in debt would strictly conform to the notice given; and if the defendant meant to tender amends for tlie injury he had done, within the true meaning of the law, he had it fully in his power. I cannot therefore accede to the position that the notice served was defective either in form or substance; and am of opinion, that the judgment of nonsuit should be reversed, the record remitted to the Common Pleas of Mifflin county, and a venire facias de novo awarded.
Beackeneid&e J.
The question in this case, depends upon the construction of the act- of assembly of the 21st March *1772. The preamble embraces two considerations, as introductory to the enacting part: The first providing for the justices of the peace against “ vexatious actions, brought for, or by reason of small and involuntary errors in their proceedings.” The second consideration is, the protecting “ the subject from all wilful and oppressive abuse of the several laws committed to the care and execution of the justices of the peace.” I conceive the last consideration fully to embrace the wilful and oppressive abuse of their power, in the execution of the law empowering them to solemnize the marriage ceremony. This being the case, on my construction of the act, the right to a notice, in case of alleged abuse, follows. I am disposed to extend the privilege to justices, in this case, because I think it possible, that, in the solemnization of marriage, the error may not be wilful; and on notice given, they may have it in their power so to explain the error, that a suit may not be brought.
But while I construe the act giving them the privilege of notice, liberally in their favor, I am not disposed to sustain a captious objection to the form; and therefore, I hold the notice given in this case to be sufficient. It conveys such information of the trespass complained of, that it is impossible for the justice not to know precisely the alleged injury ; and to meet, if so inclined, the party aggrieved with explanatory *28 representations, or pecuniary amends. Perhaps the double of the sum of 50i. tendered, might satisfy; and many justices of the peace, conscious of having acted improvidently, might be willing to pay double the sum, rather than have their names as officers brought into question, for even a mistake.
But, if notice is necessary, as I conceive for these reasons it is, it ought not to lie in the mouth of an officer to catch at a defect of form; nor ought the court to sanction it. In the case of an action merely vindictive, an astutia, to defeat it might be allowable; but in settling a general principle, it cannot be considered. At' the same time, I am far from thinking an actiou of the nature before us, a hard action. The principle is salutary, and for the peace and happiness of families; and I feel a strong sense of the indiscretion of the officer, and much more of his misconduct, if voluntary and malicious. In such a case, if there appeared evidence, I would not *hesitate to certify, and to subject him to double costs to the act.
As to the notice not being in the words of the act, I do not construe it as respecting the distinction of actions according to the form of writs, but as to the nature of the injury complained of. It is in this ease substantial, stating the grievance for which a suit is intended to be brought.
It is true that our act is verbatim from the British statute “ until notice in writing of such intended writ or process, in which shall be clearly and explicitly contained the cause of action.” The English judges have given a construction of their act, which began at Nisi Prius, and which may be called strict, or rather narrow. But there was a distinction in that case, from this; though even in that case, I am not about to approve the decision. We have a right here to consider the ease anew; and under such a notice, as that of Ward and Strickland, I should be inclined to hold it good, more especially in this country, where the substance of things is more regarded than the forms.
Judgment reversed, and Venire de novo.
[Approved in 6 Binn. 85, 87; cited in 12 S. & R. 148; 2 R. 212; 3 W. 147, 319.]