WISE and another, Administrators of GREIGOR, *against* WILLS.

### IN ERROR.

In a suit by the administrators of a constable against a justice of the peace, to recover back money alleged to have been received by him as a justice of the peace, by fraud and mistake, the justice is entitled to previous notice under the act of 1772.

WRIT of error to the Court of Common Pleas of *Cumberland* county. The plaintiffs in error were plaintiffs below, in *assumpsit* for money lent and advanced, money paid, laid out, and expended, and money had and received. Pleas, *non assumpsit* and payment, with leave to give the special matters in evidence.

The cause of action appeared by the following receipt, signed by the defendant, and given in evidence by the plaintiffs on the trial:—

"Received, *November* 27th, 1814, of *John Greigor*, by the hand of *Michael Haber*, three hundred dollars, on sundry executions which were put into the hands of *Adam Greigor*, deceased, who served as deputy constable for the aforesaid *John Greigor, per* me,
"*A. Wills.*"

The nature of the case appeared from the following charge to the jury:—

"This is a suit for money had and received. The evidence shows, that the money claimed by the plaintiffs was received by the defendant, in virtue of his office as a justice of the peace; being the amount of debt, interest, and costs, in a number of suits brought before him, by different plaintiffs against various defendants; in which trials were had, judgments rendered, and executions issued, and put into the hands of *Adam Greigor*, as deputy constable of *John Greigor*, and the monies paid over by *John Greigor* to the defendant. It is now alleged, that the constable was not liable: That the debt, interest, and costs, &c. were not due, or had been paid: That there was mistake and fraud in the settlement and receipt of the money, and the defendant should refund. It is objected, that no notice was served on the defendant, agreeably to the provisions of the acts of assembly, &c. We have no doubt, the law requires a previous notice, before this suit can be sustained: The money was received by the defendant as a justice of the peace; received by him in his official character. The computation and reckoning were by him as a justice of the peace. All his dockets are made by him as a justice. If there is fraud, it is official fraud;

(Wise and another, Administrators of Greigor, *v.* Wills.)

and if mistake, it might have been rectified without suit, if notice had been served. We think the plaintiffs cannot recover." To this charge the plaintiffs excepted.

Two errors were now assigned:—

"1. The decision of the court was erroneous, that previous notice to the defendant was required by the act of assembly of the 21st of *March*, 1772, of the suit, whether the money, which it was brought to recover back, was received by him through mistake, or fraudulently.

"2. That the court took from the jury the decision of the facts which had been adduced in evidence."

The cause was argued by *Williamson* and *Carothers*, for the plaintiffs in error, who, in their argument, relied upon the words of the act of assembly of 1772, *Purd. Dig.* 351. *Prior* v. *Craig*, 5 *Serg. & Rawle*, 44. *Norris's Peake*, 620. 2 *W. Black. Rep.* 1330. 2 *Stark. Ev.* 811. *Eastwick* v. *Hugg*, 1 *Dall.* 222. *Jones* v. *Hughes*, 5 *Serg. & Rawle*, 301. And by *Penrose* and *Ramsey*, for the defendant in error, who relied upon the same act of assembly. In their arguments they cited, *Mitchell* v. *Cowgill*, 4 *Binn.* 24.

The opinion of the court was delivered by

HUSTON, J.—No evidence was sent up except the copy of the receipt, which it is not necessary to copy. The only statement of the evidence was contained in the charge of the judge of the Court of Common Pleas. This is a suit for money had and received. The evidence shows, that the money claimed by the plaintiffs, was received by the defendant in his official character, and by virtue of his office of a justice of the peace, being the amount of debt, interest, and costs, in a number of suits brought before him by different plaintiffs against various defendants, in which trials were had, and judgments given, and executions issued, and put into the hands of *Adam Greigor*, as deputy of *John Greigor*, the constable. *John Greigor* paid over this money to the defendant. It is now alleged, that the constable was not liable: That the debt, interest, and costs, were not due, or had been paid: That there was mistake or fraud in the settlement and receipt of the money, &c., and that the defendant should refund. It is objected, that no notice was served on the defendant, agreeably to the provisions of the act of assembly. We have no doubt, the law requires a previous notice before this suit can be sustained. The money was received by the defendant as a justice of the peace, received by him in his official character. The computation was by him as a justice of the peace; all entered in his dockets as a justice of the peace. If there is fraud, it is official fraud; and if mistake, it might have been rectified without suit, if notice had been served. We think the plaintiffs cannot recover.

By the act of assembly of 1810, the justice, as justice, was to receive the money.

(Wise and another, Administrators of Greigor, *v.* Wills.)

It has been argued, that the act only relates to actions sounding in tort; not to *assumpsit,* replevin, and actions not admitting the plea of not guilty. The cases cited on this subject are all under the sixth section of the act, and relate to suits against the constable, or some other officer executing the process of justice; and there are authorities to this effect. *Norris's Peake,* 620. As I do not at present see the reason on which these decisions are founded, I shall say no more about them. But the decisions, so far as my research has gone, are confined to constables, &c., and such officers as by other laws have the same protection. If there is any case in which the same decision has been made, as to justices, I have not found it.

Our act of assembly is only a transcript of a *British* statute. In *England,* justices have no civil jurisdiction, strictly so called; in other words, no debts are sued for before them. When our act passed, justices had jurisdiction of debts not exceeding five pounds; now, of debts not exceeding one hundred dollars; and more than nine-tenths of their business is collecting debts. Although no case can be found which goes to show that the *British* act was applied to protect a justice receiving a debt by mistake, it does not follow it is not a protection here, or would not be there (in fact, in some cases, since the revolution, where they do enforce the payment of money, it is a protection,) if they had jurisdiction; (for *any thing done in execution of his office,* will embrace civil as well as criminal matters;) and it has been so considered, I think, whenever it has come before our courts. See *Kennedy* v. *Shoemaker,* 1 *Browne,* 61. *Slocum* v. *Perkins,* 3 *Serg. & Rawle,* 295. *Prior* v. *Craig,* 5 *Serg. & Rawle,* 44. *Jones* v. *Hughes,* 5 *Serg. & Rawle,* 301. *Lake* v. *Shaw,* 5 *Serg. & Rawle,* 517.

The statute supposes some wrong to have been done, some excess of authority, or want of authority, or of jurisdiction; for where every thing has been done according to law, the act is useless.

There are cases in which it is discussed, what will protect a justice, and he has been protected as far as the law and the safety of the community will bear. This is, however, a different question from, in what cases is notice to be given. The words of the act, and the object of the act, agree, and no case would more require notice, that amends might be tendered; and if money has been paid over, that it might be got back and restored, than such a one as the present.

The act was made to prescribe a certain requisite; it requires a notice where the act was done in execution of his office; it does not discriminate between mistake, malice, or fraud, and I do not see how we can. It provides a certain rule. If we leave this, the court, or the jury, must make the rule; and this would result in any thing but a certain or uniform rule.

I doubted, on account of the last section, limiting the time of action; but if not brought within that time, and the justice has received the money, which he does not pay over to those entitled, there is a remedy, and a summary one, to compel him to pay it over.

(Wise and another, Administrators of Greigor, *v.* Wills.)

Tod, J.—The plaintiffs' testator, *John Greigor*, being elected constable, not acting in the office himself, but executing it by his deputy, *Adam Greigor*, and that deputy being dead, he pays over to *Wills*, the justice, the round sum of three hundred dollars, and takes a receipt in very general terms. Not long after having made this payment, the principal himself, *John Greigor*, also dies, and his administrators, alleging mistake or fraud, and that no such sum was due to *Wills*, the justice, bring this action to recover back money, which they undertake to show, belongs to the estate of their decedent. The court below, without entering into the merits of the cause, were of opinion, that the plaintiffs were barred of their action, by reason of their having omitted to give thirty days previous written notice, under the act of assembly of 1772, entitled, "An act for rendering justices of the peace more safe in the execution of their office, and for indemnifying constables and others for acting in obedience to their warrants."

This act of assembly being a transcript almost *verbatim* from the *English* statute of 24 *Geo.* 2, *c.* 44, *s.* 6, it is very true, that our legislature, in adopting the very words, probably intended to adopt also the construction which had been put upon the same words by the *English* courts of law. It is very true also, that by the *English* decisions, the statute has been largely applied in favour of the officers of justice, and has been made to extend to every case where a man acts *bona fide* in the supposed execution of his duty. *Norris's Peake*, 619. Indeed, so liberal has been the construction of the statute in that country to protect the officers of the law, that the court, in one case, expressed an apprehension, that if it was to be carried any further, actions of this sort would be entirely defeated. But even in *England*, I am not aware, that there can be found a precedent, or *dictum*, in any book of reports, or elementary treatise, requiring thirty days' written notice, previous to a suit in nature of debt. The authorities are all the other way, and seem to me decisive. " These statutes," says *Peake*, " being made to protect the officer against actions which go to charge him with money, *by way of damages*, for an irregular execution of his office, have been held, not to extend to actions of replevin." *Norris's Peake*, 617. *Bull. N. P.* 24. " Some excise officers (who are protected by the same, or a similar statute,) having, *as such*, illegally extorted a sum of money, it was held, that the statute did not apply to the case, and that the notice was unnecessary previous to the commencement of an action of *assumpsit*, to recover back the money." *Norris's Peake*, 620. " This clause, (requiring notice, &c.) embraces actions of tort only, and does not extend to actions brought against an officer for money had and received, which had been levied by him under a conviction which was afterwards quashed." 2 *Stark. Ev.* 810. 2 *W. Black.* 1330.

Now, I take it, that it is by no means the rule in *Pennsylvania*, to extend the construction of the statute for the protection of officers,

(Wise and another, Administrators of Greigor, *v.* Wills.)

further than it has been carried by the courts in *England.* The very contrary has been often declared, and particularly, by all the judges, in *Mitchell* v. *Cowgill*, 4 *Binn.* 20, and on the very point now before us, GIBSON, J., in giving the opinion of the court in *Prior* v. *Craig*, 5 *Serg. & Rawle*, 44, says, " It is true, an action of *assumpsit* to recover back fees illegally taken, may be sustained against a justice, without giving him notice, for the plaintiff thereby waives the official tort, as he may well do, and goes only for the money actually extorted; but when he goes for a penalty, or for damages for a tort, the case is altogether different." Then, as far as precedents go, the decision of the court below would seem to be wrong. It would be with some reluctance that I would consent to disturb the settled construction, even if I thought it erroneous. But here, if a construction was now to be put upon the statute for the first time, I should be inclined to have the same opinion, and to believe, that its provisions were not intended to apply to a case like the present. If a justice, *as such*, has a legal demand, and is once paid in full, and afterwards, by mistake, or otherwise, receives the same money over again, it is not clear to me, that he can be said to receive this last payment by virtue of his office; nor do I see by what explicit rule of law, after execution issues, the justice, *as such*, is entitled to receive any part of the money, except his own fees. Still less clear does it seem to be, in the settlement with *John Greigor*, and the receipt of the three hundred dollars, if, as the administrators allege, the justice received money not payable to him, and put it into his own pocket, how this transaction, between two men, and the justice himself one of them, can be rightly called a judicial act, and in this way his claim as a creditor, and his taking of the money, be transformed into a sort of decision, as a justice of the peace. But waiving all these matters, and supposing that the justice received the money by virtue of his office merely, still, if he has been overpaid, if there has been any mistake or deception, which I by no means say is proved by the evidence, but which I say the jury ought to have been left to decide on, then my opinion would be, that the same rules of law would apply to the case that would apply to a mistake or fraud in a like transaction between other persons; and precisely the same notice, or previous request, would be required in proof, which would be required in case of a defendant not a justice, receiving money not his own. I take it, the act of assembly was not meant to apply to the case of a debt, nor to money alleged to be overpaid on sundry executions; but to cases of abuse of authority, or official injury done; cases in which the jury may, if they think proper, give vindictive damages. The term *vexatious*, in the act of assembly, the tender of amends, the power of the jury to decide, whether the amends are sufficient, the plea of not guilty, all seem wholly unintelligible, if applied to the recovery of a debt. A short limitation against vindictive actions is common enough, but a provision by statute, cutting off a mere debt,

(Wise and another, Administrators of Greigor, *v.* Wills.)

fair and just, by a limitation of six months, if found in this act of assembly, is, I think, found here only. There appears some absurdity in the very idea of a plea of not guilty in a suit brought by administrators, and, what seems still more irreconcileable with all legal notions, if the justice, in a case like this, should happen to die, there might not only be a plea of not guilty on behalf of administrators in a suit brought by administrators, but the court might be called upon to certify, that an injury had been wilfully and maliciously committed by a dead man, and to punish it by double costs upon his representatives. If a justice of the peace holding the money of another, cannot be sued for the debt, without thirty days' written notice, then, I apprehend, it ought to follow, that a constable getting money into his hands on execution, should not be sued for it without the six days' previous written notice and demand: for by the act of assembly, the notice to the constable is as positively required, as the notice to the justice. Yet, in practice, I believe, such notice was never required in case of demand of money collected by a constable.

·GIBSON, C. J. concurred with TOD, J.

Judgment affirmed.