## The Commonwealth, to the use of Lancaster City, *versus* Frailey *et al.*  ·

1. The Act of March 21st 1772, requiring thirty days' notice before bringing suits against justices, does not apply to suits on their official bonds under the 6th sect. of Act of June 21st 1839.

2. An alderman of Lancaster collected water rents under an ordinance of the city. *Held*, that thirty days' notice before bringing suit on his bond for not paying over, was not necessary.

3. When a demand is made and the money not paid over, the bond is broken.

4. Proceedings against justices under the Acts of 1772, 1839, and March 28th 1820, compared.

5. Jones *v.* Hughes, 5 S. & R. 301 ; Wise *v.* Wills, 2 Rawle 208, remarked on.

May 26th 1871.   Before READ, AGNEW, and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Lancaster county:* No. 93, to May Term 1871.

This was an action of debt by The Commonwealth to the use of the Mayor, &c., of the City of Lancaster, against Charles R. Frailey, John P. Weise and William Carpenter, on Frailey's official bond as an alderman of the city of Lancaster, the other defendants being his sureties.

The writ issued March 15th 1869.

The bond was dated February 24th 1865, in the sum of $1000, conditioned in accordance with the 6th section of the Act of June 21st 1839 (Pamph. L. 374, Purd. 591, pl. 15), that Frailey should "faithfully apply all moneys that came into his hands as an officer."

By an ordinance of the city of Lancaster, the mayor of the city is required yearly to place a list of the unpaid water-rents in the hands of an alderman for collection. The mayor, in accordance with this ordinance, placed in Frailey's hands for collection lists of the unpaid water-rents for the years 1865, 1866, 1867 and 1868. Of the rents collected by Frailey he failed to pay over the amount of $1303.20.

This was the breach of the bond on which the plaintiff declared. The defendants pleaded payment with leave, &c. They also filed special pleas, that thirty days' notice of the intention to bring the suit had not been given, and that suit had not been brought within

[Commonwealth *v.* Frailey.]

six months of the breach, as required by the Act of March 21st 1772, §§ 1–7 (1 Sm. L. 364, Purd. 607, pl. 115), viz.:—

"Whereas, justices of the peace may be discouraged in the execution of their office by vexatious actions brought against them, for or by reason of small and involuntary errors in their proceedings; and whereas, it is necessary that they should be rendered safe in the execution of the said office and trust; and whereas, it is also necessary that the subject should be protected from all wilful and oppressive abuse of the several laws committed to the care and execution of the said justices of the peace : *Be it enacted*, That no writ shall be sued out against, nor any copy of any process at the suit of a subject, shall be served on any justice of the peace for anything done by him in the execution of his office, until notice in writing of such intended writ or process shall have been delivered to him, or left at the usual place of his abode by the party, or his attorney or agent, who intends to sue or cause the same to be sued out or served at least thirty days before the suing out or serving the same; in which notice shall be clearly and explicitly contained the cause of action, which the said party hath or claimeth to have against such justice of the peace. \* \* \*

"*Provided*, That no action shall be brought against any justice of the peace for anything done in the execution of his office, \* \* \* unless commenced within six months after the act committed."

The cause was tried November 29th 1870, before Hayes, J.

The plaintiff having closed with the foregoing facts in evidence, the defendants moved the court to direct a nonsuit, which was ordered, and a rule granted to show cause why the nonsuit should not be stricken off.

After argument, the rule was, on the 14th of January 1871, discharged, Judge Hayes saying:—

"At the trial it appeared to us that Wise *et al. v.* Wills, 2 Rawle 208, governed this case, and we felt ourselves obliged by the authority to order the nonsuit. Though the Supreme Court was divided, the opinion of the court was very decisive, and it has stood unquestioned for forty years. We still think it rules this case."

Entering the judgment of nonsuit was assigned for error on the removal of the record to the Supreme Court by the plaintiff.

*J. W. Johnson* and *G. M. Kline*, for plaintiff in error, cited the Acts of 1772 and 1839, *supra;* Prior *v.* Craig, 5 S. & R. 44; Commonwealth *v.* Kendig, 2 Barr 448; Hale *v.* Commonwealth, 8 Id. 415; Ditmars *v.* Commonwealth, 11 Wright 335.

*S. H. Reynolds, O. J. Dickey* and *J. B. Amwake*, for defend-

[Commonwealth *v.* Frailey.]

ants in error, cited the same acts; Mitchell *v.* Cowgill, 4 Binney 20; Lowrie *v.* Verner, 3 Watts 319; Jewel *v.* Howe, 3 Watts 148; Wise *v.* Wills, Prior *v.* Craig, *supra.*

The opinion of the court was delivered, October 9th 1871, by

AGNEW, J.—This case was decided in the court below on the authority of Wise *v.* Wills, 2 Rawle 208. The cases are dissimilar. In Wise *v.* Wills there was a settlement between a justice of the peace and a constable for sundry executions put into the hands of the constable's deputy, upon which default was alleged to have been made. The justice charged the constable with the sum of $300, alleged to be due upon the executions, and received the money. The suit was brought by the representatives of the constable against the justice, alleging that he had charged and received the money in fraud or mistake. The wrongful receipt of the money under color of his office was, therefore, the ground of the action; and notice was held to be necessary under the Act of 21st March 1772, in order to enable the justice to tender amends. But in the present case no wrong or injury is alleged, but simply the non-payment of money which the alderman had legally received and failed to pay over. The unpaid water-rents of the city of Lancaster were placed in the hands of the alderman to collect, and he had received them from the debtors of the city. This action was brought on the official bond given by the alderman with sureties, under the Act of 21st June 1839, for his failure to pay over the money thus received. It is obvious that this suit is not one brought, in the language of the preamble of the Act of 1772, for any "small and involuntary error in his proceeding," or tending to "discourage him in the execution of his office;" or, in the language of the enactment itself, "for anything done by him in the *execution of his office.*" Had the alderman in this case been sued by one of the debtors of the city to recover a water-rent he had received in his official capacity, on the ground that it was paid through his fraud or mistake, the case would resemble Wise *v.* Wills, and a thirty-day notice would have been necessary according to that decision. There the alderman would have been entitled to thirty days, to enable him to examine the allegation and to tender amends for his error or mistake. But here the official act was legal and complete in the receipt of the money from the debtor of the city, and nothing remained but to pay it over to the city. No complaint is made of any error or wrong done in the execution of his office. If the alderman allege he did not receive the money, that alone is a defence to the action; no amends can be tendered where no money has been received, and no notice is therefore necessary. But if he have the money, his non-payment is voluntary. It is because he has the money and has not paid it over, the action lies on the bond. Here is no

error or mistake, no unintentional injury which he should have an opportunity to atone for without suit, by making amends. The very point of this distinction was taken by Huston, J., in delivering the opinion of the court in Wise v. Wills: "The statute (he says) supposes some wrong to have been done, some excess of authority, or want of authority or jurisdiction; *for where everything has been done according to law, the act is useless.*" The principle had before been stated by Gibson, J., in Jones v. Hughes, 5 S. & R. 301: "It may be laid down (he says) as a general rule, that wherever the officer has acted *honestly* although *mistakenly*; when he supposed he was in the execution of his duty, although he had no authority to act, he is entitled to the protection of the Act of Assembly. But the cause of action must be a *wrong suffered from an act done by the justice in the execution of his office.*" Here there is no allegation that the alderman has done an honest but mistaken act of injury, or a wrong in the execution of his office. He has received the money legally, and is not sued to refund it as a sum paid in error. Perhaps a demand might be necessary to put him in default, because of his official position which entitles him to require those having business with him to come to his office to attend to it; but not to add to that a notice of thirty days to tender amends. He is in default when a demand is made and the money not paid over—his bond is broken.

The case does not rest on the foregoing considerations alone, but is affected by the laws passed since 1772 on the subject. The Act of 21st March 1772 is a transcript of a British statute (see Wise v. Wills), which was passed in relation to magistrates having no civil jurisdiction, and not receiving officers, as justices and aldermen are under our Acts of Assembly. The English statute was therefore intended only for wrongs committed in the execution of the office. But justices and aldermen being made receiving officers in civil cases, our legislature provided a special remedy for the non-payment of moneys received by them in their official capacity: see Act of 28th March 1820, § 8, 7 Smith's Laws 310. The proceeding is by petition to the Court of Common Pleas, citation and hearing, with a jury trial if demanded to try disputed facts. Had it not been for the passage subsequently of the Act of 1839 relating to elections of justices and aldermen, this remedy alone could be pursued. It was held that no action would lie for the receipt of money by our justices before another justice, or (by reason of the Act of 1806) in court in a common-law form: Montgomery v. Poorman, 6 Watts 384. After the amended Constitution of 1838 had made the office elective, the legislature deemed it proper to provide for bonds to be given by justices and aldermen. The Act of 21st June 1839, § 6, Pamph. L. 378, provided that before they shall enter on the duties of their office, they shall give a bond with sureties conditioned *inter alia*

"for the faithful application of all moneys that come into his hands as an officer." It further provides that the proceedings on such bonds shall be under and pursuant to the provisions of the Act of 16th June 1836, in relation to official bonds, and limits the recovery against the sureties to the period of eight years from the date of the bond. Here, then, is a special security and a special remedy provided by law for the collection of moneys received in the official capacity of the justice or alderman. It is clear that the notice and tender of amends contemplated by the Act of 1772 are inapplicable to the case of moneys received and not paid over on demand.

Judgment reversed, and a *venire facias de novo* awarded.