## Stansbury *against* Bertron.

A notice to a justice of the peace that he may tender amends before suit brought, must specify the nature and circumstances of the injury to be redressed; but a circumstance unnecessarily set out, as the date of an Act of Assembly, which he violated and thereby incurred the penalty, must be as set out, otherwise the plaintiff cannot recover.

A father who turns his daughter out of his house upon the world to shift for herself, thereby relinquishes his paternal rights in relation to her person, absolves her from filial allegiance, and deprives himself of a right of action under the statute against marrying minors without the consent of their parents.

ERROR to the Common Pleas of *Wyoming* county.

Moses Bertron against Washington Stansbury. This was an action of debt to recover the penalty of £50 imposed by the Act of 14th February 1729–30 upon justices of the peace for marrying minors without the consent of their parents. The plaintiff offered in evidence the following notice, which was served upon the justice:

" Luzerne—Sir—Take notice, that if you do not tender sufficient amends within thirty days from the date hereof, I will bring my action against you in the Court of Common Pleas of Luzerne county to recover £50 in the following case, to wit: that you maliciously, illegally, and contrary to the Act of Assembly passed the 14th day of February, A. D. 1829–30, and entitled a supplement to an Act for the preventing clandestine marriages, did on or about the 30th day of November last, at the tailor-shop of Richard J. Welch, in the borough of Tunkhannock, marry my daughter, (Juliann Bertron), under the age of 21 years, to one Richard J. Welch, without my consent being previously obtained, and without the publication of bans as required by said Act of Assembly. By reason of which malicious and illegal conduct of yours I have sustained material injury and damage, and an action on said Act of Assembly has accrued to me against you for the recovery of a penalty of £50.

Your ob't serv't,

his<br>Moses X Bertron.<br>mark

December 15th 1842."

This endorsement was on the back of the notice—"Washington Stansbury, Esq., Justice of the Peace. James Holliday is my attorney. His place of abode is at," &c.

The defendant objected to this evidence for the following reasons:

[Stansbury v. Bertron.]

" 1. It refers to an Act of Assembly that does not exist, and states that the action will be founded upon ' *said* Act of Assembly.'

2. It is signed with a cross, purporting to be the mark of plaintiff, but no witness's name attached, to whom defendant might apply to ascertain the fact.

3. The endorsement upon the back is not sufficiently certain, inasmuch as it does not state *whose* attorney James Holliday is."

The objections were overruled, and the defendant excepted.

The plaintiff then proved the minority of his daughter and her marriage by the defendant, who was a justice of the peace.

It was then proved by the plaintiff's daughter herself, who was then called by the defendant, that her father was in the habit of intoxication, and frequently turned her out of doors with her mother, and that they slept in the stable; that he told her to go about her business, and do for herself. She also testified that she had married Welch upon an acquaintance of three or four days; that at the time she left her father's house before her marriage, she was not turned away; that it was her intention to return before her marriage; that it was only when her father was drunk that he treated her badly and turned her out; at other times he was kind enough.

The defence relied upon was, 1. The insufficiency of the notice. 2. That the plaintiff has not disproved the publication of bans. 3. The existing relation between the parent and child was not such as to entitle him to maintain the action.

The court below was of opinion that the grounds of defence were not tenable, and the jury rendered a verdict for the plaintiff for £50.

*M'Clintock,* for plaintiff in error, cited 5 *Rawle* 209; 4 *Bin.* 24; 3 *Watts* 144; 22 *Eng. Com. L.* 387; 9 *Dow. & Ry.* 194; 15 *Eng. Com. L.* 61; 1 *Chit. Pl.* 197. 322.

*Wright,* for defendant in error, cited 12 *Serg. & Rawle* 148.

The opinion of the Court was delivered by

GIBSON, C. J.—A statute which founds an action is to be strictly pursued. The notice to tender amends, which is the first step in a case like the present, is in the nature of a declaration, pointing out, with sufficient precision to preclude mistake, the nature and circumstances of the injury to be redressed. Without the technical formality of a declaration, it should have all the substance. Such is the result of the cases quoted in the argument. What, then, is the rule in pleading? A circumstance unnecessarily set out must be proved as matter of substance, because the party has made it so, though proof of it would otherwise have been unnecessary; and this holds with undiminished force in regard to recitals of statutes. A plaintiff in an action founded on a statute

[Stansbury v. Bertron.]

must set forth every fact necessary to bring his case within it; but as it is unnecessary to recite a public statute, by reason that the Judges are bound to take notice of it without pleading, the more prudent course is not to attempt it, and thus avoid the risk of variance. It was said by Lord HOLT in *Mills* v. *Wilkins*, (6 *Mod.* 62), that the title of a statute is no more a part of it than the title-page is part of a book; but that when the plaintiff attempts to recite it, " he thereby ties himself to an Act so entitled, and, if he cannot produce it, he is gone." The rule equally holds in regard to the recital of the date, a qualification of its application being found only in the mis-recital of a public statute in an indictment concluding, not against the form of the statute generally, but against the form of the statute *in such case* made and provided. The Judges, being directed by the conclusion to the only statute made for the case, may give judgment on it as the foundation of the indictment, and disregard the mis-recital as surplusage. Here, however, there is neither conclusion nor anything else pointing even indirectly to the true statute; and the plaintiff, by giving a wrong date as matter of description, has pinned himself down to the production of a statute which does not exist.

There certainly was evidence in disproof of publication of bans to be left to the jury. The marriage was private, secret and sudden; indeed, it was solemnized after a courtship of four days—a period too short to admit of publication.

But the father had ceased to stand in the relation of a parent, or consequently of a party who could be grieved. By turning his daughter loose on the world to shift for herself, he relinquished his paternal rights in relation to her person, and absolved her from filial allegiance. What though she were permitted to return to him when the intoxication which was the cause of her expulsion had passed away? It was only to be turned out of doors when he should again get drunk. I pretend *not that* a single expulsion would forfeit his rights as a parent; but a repetition, attended with treatment which would render a continuance of her residence with him intolerable, would authorize a departure from his house, and enable her to contract marriage as an agent independent of him. There was evidence of such repeated acts of barbarity and violence to this daughter and the rest of the family, as justified her in forming a connection and an establishment independent of him. What right, then, has he to complain that she did so without consulting him, when he had made such a choice on her part indispensable? The maxim is, *volenti non fit injuria;* and by wilfully subjecting her to the necessity of entering into matrimony, he excluded himself from the protection of the statute.

Judgment reversed.