## Hradil v. Tate et al.

*Rowley & Smith,* for plaintiff.

*Stewart P. McConnel,* for defendants.

SOHN, J., July 25, 1951.—Plaintiff, John Hradil, brought an action in trespass against George Tate and John W. Ramsey. In the complaint, plaintiff alleges that defendant Tate informed defendant, Ramsey, a justice of the peace, orally, that two robes had been stolen, and he had reason to believe they had been taken by plaintiff, Hradil. Defendant Ramsey issued a search warrant to a constable, directing him to search the automobile and home of plaintiff.

A constable and Tate searched the premises of plaintiff. Plaintiff alleges that the warrant was issued and the premises searched, wilfully, maliciously and without reasonable and probable cause, and that defendant Ramsey issued the search warrant without probable cause, supported by oath or affirmation subscribed to by the affiant. Plaintiff alleges that by reason of the issuance of the search warrant and the search of plaintiff's premises, the reputation of plaintiff has been greatly damaged, and he has been caused humiliation, pain and suffering. Plaintiff claims punitive damages by reason of the alleged wilful and malicious acts of

defendants. The jury returned a verdict against both defendants for compensatory damages in the amount of $250, and punitive damages in the amount of $50.

Counsel for defendants moved for a new trial and filed separate motions for judgment non obstante veredicto as to each defendant. The motion for a new trial alleges that the verdict was against the evidence, against the weight of the evidence, against the law, against the charge of the court, and that the court erred in refusing defendants' motion for binding instructions. After careful consideration, we are of the opinion that there is no substantial reason for granting a new trial. Defendants also allege that the court erred in refusing to admit certain testimony. We are of the opinion that the rulings were proper, and conformed to the law. We find no reason to grant judgment non obstante veredicto as to defendant George Tate.

We are of the opinion that the motion for judgment non obstante veredicto should be granted as to defendant John W. Ramsey. The facts with relation to this motion are not in dispute. The Act of March 21, 1772, 1 Sm. L. 364, sec. 1, 42 PS §1011, in part reads as follows:

"From and after the publication of this act, no writ shall be sued out against, nor any copy of any process, at the suit of a subject, shall be served on, any justice of the peace, . . . until notice, in writing, of such intended writ or process shall have been delivered to him, or left at the usual place of his abode, by the party, his attorney or agent, who intends to sue, or cause the same to be sued out or served, at least thirty days before the suing out or serving the same. . . ."

There is no allegation in the complaint that plaintiff complied with the provisions of the above statute. There is no proof of record that he did. It must, therefore, for the purpose of this motion, be assumed that such notice was not given. Plaintiff contends that the notice

required by the aforesaid statute is not necessary. Article I, sec. 8 of the Constitution of Pennsylvania, is as follows:

"The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."

The evidence indicates that Tate went to the office of the justice of the peace and complained to him. Tate was sworn to the complaint which he made before the justice of the peace, but did not sign a complaint. A docket entry of the complaint was made by the justice of the peace. Defendant contends that under the decision of Johnson v. Tompkins et al., 1 Baldwin 571 (Circuit Court of the United States, April term, 1833), the defendant Ramsey was not acting in the execution of his office and he engaged in a flagrant violation of the Constitution. In that case Associate Justice Baldwin of the Supreme Court of the United States presided, and he charged the jury in part as follows (pages 602-03):

"But if some things are indispensable to bring his official power into action, and those things appear not to have been done, his acts are null and void, and cannot be official; as issuing a warrant of arrest on a criminal accusation, without probable cause, supported by oath or affirmation—the power to do this is expressly excepted from all the powers of the government by the bill of rights of Pennsylvania.

"No act can be by virtue of office, which the power of government is incompetent to authorize; it must be taken to be by the mere colour of office, and no notice is necessary, whatever his motives or intentions were."

This decision is not supported by subsequent decisions in Pennsylvania. It will be observed that Mr. Justice Baldwin refers to issuing a warrant without probable cause supported by oath or affirmation. It is unquestionably true in this case that the warrant was supported by oath or affirmation. The oath or affirmation was not subscribed to by the affiant. Therein is a distinction between the instant case and Johnson v. Tompkins, supra. We are of the opinion, however, that the position taken by defendant Ramsey is supported by the decisions of the courts of common pleas and the appellate courts of Pennsylvania to some of which we now refer.

Prior v. Craig, 5 S. & R. 44, was an action of debt, brought before a justice of the peace by Prior against Craig, a justice of the peace, to recover the penalty of $50 imposed by an act of assembly on any officer who should demand and receive illegal fees, and was removed by appeal into the court of common pleas. On the trial, after plaintiff had gone through his evidence, defendant objected that no notice had been given to him previous to the commencement of the action, agreeable to the first section of the Act of March 21, 1772. The court gave it as its opinion that such previous notice was necessary, and, therefore, directed the jury to find a verdict for defendant, which was accordingly done. Mr. Justice Gibson said, in referring to the act:

"It was intended for all cases where a justice of the peace, acting within his jurisdiction, rendered himself amenable for a wrong; and although the policy of the act may have been to secure, in some measure, the officer bound to act, and therefore in danger of going wrong, from the legal consequences of unintentional error; yet as it is, in many instances, impossible to distinguish errors of the head, from those of the heart, its

provisions must of necessity be extended to every case of official misconduct, made the subject of an action."

In Jones v. Hughes And Another, 5 S. & R. 299, Mr. Justice Gibson said:

"It may be laid down as a general rule, that wherever the officer has acted *honestly*, although *mistakingly;* where he supposed he was in the execution of his duty, although he had no authority to act; he is entitled to the protection of the act of assembly."

In Zettlemoyer v. Leeser et al., 70 D. & C. 376, Judge Staudenmeier said:

"At the conclusion of the preliminary hearing before this defendant justice of the peace, plaintiff was declared guilty of larceny and without fixing bail, defendant, William J. Leeser, ordered plaintiff committed to the Schuylkill County Prison. He was there confined from 12:30 P. M. on November 17, 1947, until about 1:00 P. M. on November 21, 1947. On November 21, 1947, an order of nolle prosequi was entered, whereupon plaintiff was discharged from prison. . . .

"This statute, being the foundation of this action, must be strictly pursued: Stansbury v. Bertron, 7 W. & S. 362.

"Notice as required by this act is a condition precedent to maintaining an action against a justice for official misconduct: Magnussen v. Shortt, 200 Pa. 257; Finkbeiner v. Chidsey, 44 D. & C. 579; Ross v. Hudson, 6 Pa. Superior Ct. 552."

In Finkbeiner v. Chidsey, 44 D. & C. 579, the justice of the peace at the hearing said: "I know the law in this case. I don't like it and never did. I don't have any jurisdiction in this case." Mabus, Finkbeiner's employe, who had also been present at the alderman's hearing testified that Alderman Chidsey refused to read the "Eisenberg Case" and said, "I am familiar with the law and I know I have no jurisdiction in this case. I don't like the law. Proceed with your case". Counsel

made some further effort to persuade Alderman Chidsey that he did not have jurisdiction, but Alderman Chidsey remained adamant, saying counsel "could appeal if he did not like it".

President Judge McCluskey said:

"Counsel for plaintiff has now taken the position that the magistrate, knowing that he did not have jurisdiction, maliciously endeavored to assume jurisdiction and is not entitled to the protection of the act of 1772.

"The Act of March 21, 1772, 1 Sm. L. 364, which was almost a verbatim transcript of the English Statute, 24 George II, c. 44, is a venerable monument in the statutory law of the Commonwealth: 42 PS §1011. At one time or another, it has come up for construction before most of the illustrious judges of our early courts, and it would be idle now to attempt to reconcile the dicta of frowning admonition with which they entered judgment in favor of their erring magistrates and constables. The act affords protection, it was declared, wherever the officer acted honestly although mistakenly: Jones v. Hughes et al., 5 S. & R. 299, 301 (1819). Yet, in a suit against a justice of the peace who had allegedly received money by fraud, it was held that he was entitled to notice: Wise et al. v. Wills, 2 Rawle 208 (1828). It was solemnly stated that, where the justice goes beyond his jurisdiction, he can not assume an official character or claim the privilege provided by the act: Prior v. Craig, 5 S. & R. 44, 46 (1819). But when the case arose, and it arose that very same year and before the very same Judge Gibson, judgment was entered for a justice of the peace who ordered a stranger arrested for traveling on the Sabbath, which was no crime in Pennsylvania, and who directed the warrant to be served on a Sunday, which was totally unauthorized, because counsel for the injured suitor omitted to serve the statutory notice. . . .

"The statute itself provides the only satisfactory test of its application: was the act, subject of suit, done by the magistrate in the execution of his office? That was the theory under which Justice Gibson, by then chief justice, refused wisely or not its protection to the constable who had acted in contempt of his warrant: Lantz v. Lutz, supra. That was the theory under which the cases were regularly decided, whatever was said. That was the test which ultimately prevailed over all the dicta concerning wilfulness, malice, and want of jurisdiction. . . .

"In the instant case, there can be no doubt but that the defendant alderman acted in the execution of his office. As a magistrate, he issued a summons to plaintiff. As a magistrate, he undertook to hear testimony. As a magistrate, he entered judgment against Finkbeiner. And the very procedure which counsel originally took, a writ of certiorari, to rectify the misdeed establishes the official character of the alderman's act. Had defendant entered the judgment under a misapprehension as to the law, it is clear that he could not have been answerable to Finkbeiner at all: Jones v. Hughes et al., supra, p. 299; in the absence of fraud or corruption, he would not be liable for a mistaken judgment though aggravated by rudeness and discourtesy: Hanna v. Slevin, 8 Pa. Superior Ct. 509, 511 (1898). And assuming that defendant entered the judgment, knowing he did not have jurisdiction, wilfully, arbitrarily, even with malice, he acted in the execution of his office and was entitled under the statute to the proper notice: See Killion v. Davis, 1 Phila. 215 (1851).

"In the facts of the instant case it is difficult to discover any good reason to conjure with the clear language of the act. If the alderman acted wilfully and oppressively, knowing he did not have jurisdiction, this statute does not preclude redress of the wrong, and

counsel would not have jeopardized plaintiff's rights by giving defendant notice of the intended suit. To the contrary, the facts of this case emphasize the wisdom of the statute. Notice given, together with a reversal of the unauthorized judgment, might very well have persuaded defendant to make amends. In that event, all the litigation which ensued would have been avoided. While, on the other hand, had defendant remained obdurate after notice, counsel would have indisputably made his point that this was indeed a case calling for legal reprimand."

In Frahley v. Miller, 2 D. & C. 106, defendant issued a summons returnable to July 16, 1920, at 7:30 p.m.; plaintiff did not appear at the hearing; thereupon defendant issued a warrant of arrest upon which plaintiff was arrested and committed to the Lehigh County Jail, where he was incarcerated from July 16, 1920, at 8:15 p.m. until July 17, 1920, at 12:15 a.m. He further avers that "the defendant on July 30, 1920, was given notice of the claim of the plaintiff against him, as required by the Act of March 21, 1772, 1 Sm. Laws, 364, a copy of which is hereto attached and marked Schedule D". Judge Reno, now a member of the Superior Court said:

"Aldermen in cities of the third class, of which class is Allentown, 'have all the powers and jurisdiction of a justice of the peace' (Act of May 23, 1874, §32, P. L. 248), and therefore are entitled to the preliminary notice provided for by the Act of March 21, 1772, 1 Sm. Laws 364, before suit may be instituted. Cf. Hodges v. McGovern, 230 Pa. 368; Hanna v. Slevin, 8 Pa. Superior Ct. 509; Ross v. Hudson, 6 Pa. Superior Ct. 552. That statute being the foundation of the action, must be strictly pursued and the notice must set forth every fact necessary to bring the case within the act: Stansbury v. Bertron, 7 W. & S. 362. Hence, the notice must specify the name of plaintiff's attorney or agent, if he

have one, and the place of abode of such attorney or agent. The courts will probably not insist that this information be endorsed on the back of the notice if it appears upon the face of the notice: Slocum v. Perkins, 3 S. & R. 294; but it is essential to the validity of the notice that the name of the attorney or agent and his place of abode shall appear somewhere in the notice. The notice in the instant case lacks this essential."

In Mayhew v. Meeker, 70 Pitts. L. J. 898, 899, Judge Hirt, now of the Superior Court, said:

"This case is before the court on statutory demurrer. It is an action in trespass against a justice of the peace for malicious prosecution, false arrest and false imprisonment. . . .

"The plaintiff's statement must be self-sustaining. Obviously, therefore, the statement must contain as part thereof, a notice which complies with the terms of the above act of assembly, and the copy of the notice attached to plaintiff's statement as Exhibit B must be considered a part of plaintiff's statement as fully as if incorporated therein. The service of the notice and its contents are facts which must be pleaded in order to sustain plaintiff's right of action. Plaintiff's contention, therefore, that the character of the notice is immaterial at this stage of the proceeding is without merit. . . .

"A statute which founds an action must be strictly pursued, Stansbury v. Bertron, 7 W. & S. 362, and our sole inquiry is whether or not the notice in this case complies strictly with the requirements of the act. . . .

"These objections interposed by defendant are wholly technical, but under the decisions are fatal to plaintiff's right of action in this case. Lake v. Shaw, 5 S. & R. 517; Slocum v. Perkins, 3 S. & R. 295; McClelland v. Semmers, 1 D. R. 356; Robinson v. English, 34 Pa. 324; Jewell v. Howe, 5 Watts 144; Stansbury v. Bertron, 7 W. & S. 362."

In Ross v. Hudson, 6 Pa. Superior Ct. 552, defendant, a justice of the peace, on complaint in writing of a collector of taxes, issued a warrant authorizing a constable named therein to levy the amount of a tax assessed against plaintiff, the language of the writ being as follows:

"In case goods and chattels sufficient to satisfy the said tax with costs cannot be found, you are hereby authorized to take the body of the said J. W. Ross and convey him to the jail of the proper county, there to remain until the amount of said tax with costs shall be paid or secured to be paid, or until he be otherwise discharged by due course of law." Plaintiff neglected or refused to make payment of the tax, and under the authority of the warrant issued by defendant, plaintiff was taken into custody, but before being committed to prison he was discharged under habeas corpus proceedings. Judge Orlady said:

"The learned trial judge refused to affirm the point, and held that 'If the justice was acting within his jurisdiction, within the powers of his office, then he is entitled to have thirty days' notice so that he may make any amends which he may think the case warrants; but when he is acting without any jurisdiction, simply under color of his office because he is a justice, then he is not entitled to any such notice.' . . .

"If the defendant acted in honest ignorance, or in an honest belief that he was acting by reason of his office as justice of the peace in putting the law in motion, he was entitled to the notice required by the Act of 1772. The answer of the learned trial judge to the defendant's third point imposed a higher standard of duty on the justice of the peace than is required by the law.

"The English cases are uniform on this subject: Booth v. Clive, 10 C. B. R. 827; Arnold v. Hamel, 9 Exch. 404; Heath v. Brewer, 15 C. B. R. (N. S.) 802; and the decisions of our courts are in accord with them:

Jones v. Hughes, supra; Wise v. Wills, 2 Rawle, 208. A justice of the peace who illegally orders or causes the arrest of a citizen may be made liable in an action for damages: McCarthy v. DeArmit, 99 Pa. 63; Neall v. Hart, 115 Pa. 347; but to be so held liable the statute requires the preliminary notice to be given so that proper amends may be made and expensive litigation avoided."

In Hodges v. McGovern, 230 Pa. 368, one Hodges failed to pay this judgment and as alleged by him a capias was issued thereon, directed to a constable, and he was taken into custody by the constable and detained in the office of the alderman for several hours.

This action of trespass was brought by him against McGovern as an alderman, and Campbell as a constable, for unlawful arrest and false imprisonment. The record shows that the action is against them in their official capacity, as the title to the action and the statement in the court below designates them as such, and it is admitted that no notice in writing had been delivered to the alderman at least 30 days before the suing out of the same, clearly and explicitly containing the cause of action, as required by the Act of March 21, 1772, 1 Sm. L. 364, 2 Stewart's Purdon 2162. The trial judge said:

" '. . . and I thought that perhaps the act of assembly might apply to such a case as that, but I am satisfied that the act does not apply to such a case, and that the alderman and constable are not protected by that act if what the plaintiff claims be true, because they did not make this arrest in the exercise of their office, but made it without any authority at all, no warrant having been issued by the alderman, and the constable having no warrant or writ of execution upon which he could base his authority to make the arrest,' and held that the alderman was not entitled to the notice provided for in the act of 1772."

Judge Orlady said, in an opinion which was affirmed by the Supreme Court (43 Pa. Superior Ct. 566):

"We cannot agree with this interpretation of the testimony. . . .

"Under the pleadings, at the time the amendment was allowed, the lack of notice required by the act of 1772 was a bar to the action; and under the undisputed testimony, the present plaintiff was taken into custody by an officer of the law, notified that he was under arrest, then taken to the office of an alderman, who confirmed the statement of the constable that he had 'arrested Hodges and he has got to pay that bill, or I will put him in jail if he doesn't.' These were acts which could only be interpreted as being by virtue of their offices of alderman and constable, and not under mere color thereof. Furthermore, Hodges was represented before the alderman by his attorney, who demanded his release on account of the irregularity of the proceeding, coupled with a plea for extension of time, and a promise of payment of the judgment, which was refused by the alderman, and the threat as above quoted was then made. While the statutes of amendments are to be construed liberally so as to give effect to their clearly defined intent, and to prevent the defeat of justice through mere mistake, they will not be allowed to the prejudice of parties, by introducing a new cause of action or bringing in a new party, or changing the capacity in which he is sued: Grier Bros. v. Assurance Co., 183 Pa. 334; Soperstein v. Salsberg, 17 Pa. Superior Ct. 288; Peterson v. Delaware River Ferry Co., 190 Pa. 364; Garman v. Glass, 197 Pa. 101. . . .

"His liberty was interfered with by the constable and alderman, who acted by virtue of their offices, and the undisputed evidence in this record shows that these officers were being sued in their official capacity. In this view of the case it was error to allow the amend-

ment, and the assignments of error are sustained; the judgment is now reversed for the reason that the alderman was entitled to the notice as required by the act of 1772."

Magnussen v. Shortt, 200 Pa. 257, was an action of trespass for malicious prosecution. At the trial it appeared that on October 14, 1897, William H. Shortt made information before M. W. Harrington, a justice of the peace, and one of the defendants, as follows:

"Personally appeared before me, a justice of the peace, in and for said county, Wm. H. Shortt, president of Sugar Grove Savings Bank, who being sworn according to law, deposes and says, that on or about the 4th day of October, 1897, as he verily believes, that John P. Gustafson and Jonas P. Magnussen and some other person, to the complainant unknown, did, without leave or right, take from the premises of Gust and John Swanson, one spring road wagon, one covered buggy, one cutter, belonging to the Sugar Grove Savings Bank."

A warrant was issued and Magnussen and Gustafson were arrested, and bound over for trial. An indictment was framed which the grand jury ignored. No notice of suit was given to Harrington as provided by the Act of March 21, 1772. The court granted a nonsuit as to Harrington which it subsequently refused to take off. The court also held that as the information did not charge a felonious taking, the suit could not be maintained against W. H. Shortt.

The Supreme Court, in a per curiam opinion, held:

"In this case a verdict was rendered for the defendants by direction of the court below, and the plaintiff appealed to this court. An examination of the assignments satisfied us that no error was committed by the court below in directing the jury to render a verdict for the defendants. The assignments are dis-

missed and the judgment of the court below is affirmed."

The cases heretofore referred to fully justify the conclusion that notice required by the statute is applicable to the facts in the instant case, and plaintiff, having failed to give such notice to defendant Ramsey, is not entitled to recover in the instant action.

### Orders

And now, to wit, July 25, 1951, it is ordered, adjudged and decreed that the motion of defendant John W. Ramsey for judgment non obstante veredicto be, and it is hereby sustained, and judgment is hereby entered against plaintiff, in favor of defendant, John W. Ramsey, non obstante veredicto.

And now, to wit, July 25, 1951, defendant George Tate's motion for judgment non obstante veredicto be, and it is hereby overruled; and upon payment of the jury fee, the prothonotary is directed to enter judgment in favor of plaintiff, and against defendant George Tate.

And now, to wit, July 25, 1951, the motion for a new trial by defendants George Tate and John W. Ramsey be, and they are hereby overruled.